# NEIL JOHNSON *v.* STATEWIDE GRIEVANCE COMMITTEE
## (SC 15882)

Callahan, C. J., and Berdon, Palmer, McDonald and Peters, Js.

Argued September 25, 1998—officially released March 16, 1999

*Neil Johnson*, the appellant (plaintiff).

*Cathy A. Dowd*, assistant bar counsel, for the appellee (defendant).

*Opinion*

PALMER, J. The principal issue presented by this appeal is whether an attorney against whom a grievance complaint has been filed with the statewide grievance committee (committee) must exhaust available administrative remedies before seeking judicial recourse from an adverse ruling of the committee.[1] The plaintiff, Neil Johnson, an attorney, sought a permanent injunction in the Superior Court prohibiting the committee from taking any further action on a grievance complaint that had been filed against him. The committee moved to dismiss the plaintiff's action, claiming that the court lacked subject matter jurisdiction over the action

---

[1] The grievance procedures applicable to complaints against attorneys are set forth in General Statutes §§ 51-90 through 51-94, and Practice Book § 2-29 et seq. The statutory and practice book provisions governing the discipline of attorneys parallel each another in all material respects.

because the plaintiff had not exhausted his administrative remedies. The trial court granted the committee's motion, and the plaintiff appealed to the Appellate Court, which, in a per curiam opinion, affirmed the judgment of the trial court. *Johnson* v. *Statewide Grievance Committee*, 47 Conn. App. 930, 705 A.2d 569 (1998). We granted the plaintiff's petition for certification to appeal limited to the following question: "Whether the Appellate Court properly affirmed the Superior Court's decision granting the defendant's motion to dismiss when it found that the plaintiff failed to exhaust his administrative remedies and has adequate remedies at law." *Johnson* v. *Statewide Grievance Committee*, 244 Conn. 906, 714 A.2d 2 (1998). We affirm the judgment of the Appellate Court.

The facts and procedural history relevant to this appeal are undisputed. The plaintiff represented Joseph Willis in connection with a 1988 real estate transaction. Thereafter, on September 28, 1994, Willis filed a grievance complaint with the committee alleging that the plaintiff had engaged in professional misconduct relating to that transaction. On the same day, an attorney representing Willis filed a second complaint against the plaintiff concerning the same real estate transaction.[2] On September 29, 1994, the committee forwarded these complaints to the grievance panel for the judicial district of Hartford-New Britain, geographical areas thirteen and fourteen (local panel).[3] The local panel found

---

[2] Although the record is not entirely clear, it appears that the allegations contained in the second grievance complaint against the plaintiff were the same as, or substantially similar to, the allegations contained in Willis' grievance complaint.

[3] "Each judicial district has one or more grievance panels. A grievance panel consists of two members of the bar and one layperson, all of whom are appointed by the Superior Court. General Statutes § 51-90b. A grievance panel investigates and determines whether probable cause exists for all complaints referred to it by the statewide grievance committee or the statewide bar counsel. General Statutes § 51-90f." *Lewis* v. *Statewide Grievance Committee*, 235 Conn. 693, 696 n.5, 669 A.2d 1202 (1996); see also Practice Book § 2-29.

that there was insufficient evidence to support a finding of probable cause that the plaintiff had violated the Rules of Professional Conduct.[4] Consequently, the two complaints were dismissed on March 16, 1995.

On August 11, 1995, Willis filed his second grievance complaint against the plaintiff (grievance complaint no. 95-0107), alleging-a violation of rules 1.7 (b)[5] and 1.8 (a)[6] of the Rules of Professional Conduct. Like the two previous grievance complaints filed against the plaintiff by Willis and his attorney, this complaint alleged misconduct arising out of the plaintiff's representation of Willis in connection with the 1988 real estate transac-

---

[4] "The professional rights and obligations of attorneys practicing within Connecticut are governed by the Rules of Professional Conduct, which were adopted in 1986 by the judges of the Superior Court." *Kucej* v. *Statewide Grievance Committee*, 239 Conn. 449, 451 n.2, 686 A.2d 110 (1996), cert. denied, 520 U.S. 1276, 117 S. Ct. 2457, 138 L. Ed. 2d 214 (1997). The record does not reflect what specific violations of the Rules of Professional Conduct were alleged in the two complaints.

[5] At all times relevant to this appeal, rule 1.7 (b) of the Rules of Professional Conduct provided: "A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

"(1) The lawyer reasonably believes the representation will not be adversely affected; and

"(2) The client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved."

[6] At all times relevant to this appeal, rule 1.8 (a) of the Rules of Professional Conduct provided: "A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

"(1) The transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

"(2) The client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

"(3) The client consents in writing thereto."

This rule has since been amended to address, inter alia, transactions with former clients, investment services and the need to advise the client about seeking the advice of independent counsel.

tion. The local panel, noting that "[t]he current grievance [complaint no. 95-0107] contains much more in the way of evidence [than had Willis' earlier complaint], including affidavits from several allegedly disinterested persons," found probable cause that the plaintiff had violated rules 1.7 (b) and 1.8 (a). On November 27, 1995, the local panel forwarded its findings to the committee pursuant to what is now Practice Book § 2-32 (i)[7] and General Statutes § 51-90f (d),[8] and the committee, in accordance with what is now Practice Book § 2-35 (a)[9] and General Statutes § 51-90g (a),[10] referred the case

---

[7] Practice Book § 2-32 (i), formerly § 27F (g), provides: "The panel shall, within one hundred and ten days from the date the complaint was referred to it, file the following with the statewide grievance committee: its written determination concerning whether probable cause exists that the respondent is guilty of misconduct, a copy of the complaint and response, a transcript of any testimony heard by the panel, a copy of any investigatory file and copies of any documents, transcripts or other written materials which were available to the panel. These materials shall constitute the panel's record in the case. The panel may file a motion for extension of time not to exceed thirty days with the statewide grievance committee which may grant the motion only upon a finding of good cause. If the panel does not complete its action on a complaint within the time provided in this section, the statewide committee shall inquire into the delay and shall order that the panel take action on the complaint forthwith, or order that the complaint be forwarded to and heard by another panel or a reviewing committee designated by the statewide grievance committee."

Practice Book § 27F (g), which was in effect at the relevant time in question, is identical except that the 110 day filing period was a ninety day filing period.

[8] General Statutes § 51-90f (d) provides: "The panel shall refer the record of its investigation, together with its determination that probable cause or no probable cause exists that the attorney is guilty of misconduct, to the committee for appropriate action and any such determination shall be a matter of public record."

[9] Practice Book § 2-35 (a), formerly § 27J (a), provides in relevant part: "Upon receipt of the record from a grievance panel, the statewide grievance committee may assign the case to a reviewing committee which shall consist of at least three members of the statewide grievance committee, at least one third of whom are not attorneys. . . ."

[10] General Statutes § 51-90g (a) provides in relevant part: "The State-Wide Grievance Committee may designate at least three members of the committee, including at least one-third who are not attorneys, to serve as a reviewing subcommittee for each determination made by a panel on a complaint. . . ."

to a reviewing subcommittee for a hearing pursuant to what is now Practice Book § 2-35 (c)[11] and General Statutes § 51-90g (a).[12]

The hearing was held on July 11, 1996, at which the plaintiff filed a motion with the reviewing subcommittee seeking dismissal of grievance complaint no. 95-0107 pursuant to what is now Practice Book § 2-32 (a) (2) (D)[13] on the ground that the complaint was duplicative

[11] Practice Book § 2-35 (c), formerly § 27J (c), provides: "If the grievance panel determines that probable cause exists that the respondent is guilty of misconduct, the statewide grievance committee or the reviewing committee shall hold a hearing on the complaint. If the grievance panel determines that probable cause does not exist, the statewide grievance committee or the reviewing committee shall review the determination of no probable cause, take evidence if it deems it appropriate and, if it determines that probable cause does exist, shall take the following action: (1) if the statewide grievance committee reviewed the grievance panel's determination, it shall hold a hearing concerning the complaint or assign the matter to a reviewing committee to hold the hearing; or (2) if a reviewing committee reviewed the grievance panel's determination, it shall hold a hearing concerning the complaint or refer the matter to the statewide grievance committee which shall assign it to another reviewing committee to hold the hearing. All hearings following a determination of probable cause shall be public and on the record."

[12] General Statutes § 51-90g (a) provides in relevant part: "The State-Wide Grievance Committee or the [reviewing] subcommittee, if any, shall hold a hearing concerning the complaint if the panel determined that probable cause exists that the attorney is guilty of misconduct. If the grievance panel determined that probable cause does not exist that the attorney is guilty of misconduct, the committee or subcommittee shall review the determination of no probable cause, take evidence if it deems it appropriate and, if it determines that probable cause does exist that the attorney is guilty of misconduct, shall take the following action: (1) If the State-Wide Grievance Committee reviewed the determination of the grievance panel it shall hold a hearing concerning the complaint or assign the matter to a subcommittee to hold the hearing; or (2) if a subcommittee reviewed the determination of the grievance panel it shall hold a hearing concerning the complaint or refer the matter to the State-Wide Grievance Committee which shall assign it to another subcommittee to hold the hearing. . . ."

[13] Practice Book § 2-32, formerly § 27F, covers the procedure for filing a grievance complaint. Section 2-32 (a) provides in relevant part: "Any person, or a grievance panel on its own motion, may file a written complaint alleging attorney misconduct whether or not such alleged misconduct occurred in the actual presence of the court. Complaints against attorneys shall be

of the two prior complaints that had been dismissed for lack of probable cause. The reviewing subcommittee denied the plaintiff's motion.[14] On July 15, 1996, the plaintiff filed a motion with the committee to dismiss grievance complaint no. 95-0107, again claiming that, under Practice Book § 2-32 (a) (2) (D), it was duplicative of the two earlier complaints. The committee declined to review the plaintiff's motion.[15]

Before the reviewing subcommittee had conducted the scheduled hearing on the merits of grievance com-

filed with the statewide bar counsel. Within seven days of the receipt of a complaint the statewide bar counsel shall review the complaint and process it in accordance with subdivisions (1) or (2) of this subsection as follows:

"(1) forward the complaint to a grievance panel in the judicial district in which the respondent maintains his or her principal office or residence, provided that, if the respondent does not maintain such an address in this state, the statewide bar counsel shall forward the complaint to any grievance panel; and notify the complainant and the respondent, by certified mail with return receipt, of the panel to which the complaint was sent. The notification to the respondent shall be accompanied by a copy of the complaint. The respondent shall respond within thirty days of the date notification is mailed to the respondent unless for good cause shown such time is extended by the grievance panel. The response shall be sent to the grievance panel to which the complaint has been referred. The failure to file a timely response shall constitute misconduct unless the respondent establishes that the failure to respond timely was for good cause shown;

"(2) refer the complaint to the chair of the statewide grievance committee or an attorney designee of the chair and to a nonattorney member of the committee, and the statewide bar counsel in conjunction with the chair or attorney designee and the nonattorney member, shall if deemed appropriate, dismiss the complaint on one or more of the following grounds . . .

"*(D) the complaint as duplicative of a previously dismissed complaint.* . . ." (Emphasis added.)

[14] At the hearing on the plaintiff's motion, the assistant bar counsel, speaking on behalf of the reviewing subcommittee, indicated that the reviewing subcommittee lacked the authority to dismiss a duplicative grievance complaint at that stage of the proceedings because, under Practice Book § 2-32 (a) (2) (D), the screening of duplicative grievance complaints is done prior to the committee's referral of the case to a local grievance panel. See footnote 13 of this opinion.

[15] In an August 2, 1996 letter to the plaintiff notifying him of the committee's decision on his motion to dismiss, the statewide bar counsel stated that the committee had "declined to review your request [for dismissal], determining

plaint no. 95-0107,[16] the plaintiff, on August 28, 1996, filed an action in the Superior Court seeking a permanent injunction prohibiting the committee and any of its reviewing subcommittees and local panels from taking any further action on that complaint. The committee moved to dismiss the plaintiff's claim on the ground that the plaintiff had failed to exhaust his administrative remedies. The trial court agreed with the committee and, on November 25, 1996, granted its motion to dismiss. The plaintiff appealed to the Appellate Court, which summarily affirmed the judgment of the trial court. *Johnson* v. *Statewide Grievance Committee*, supra, 47 Conn. App. 930.

On appeal to this court, the plaintiff claims that he was not required to exhaust his administrative remedies because the exhaustion doctrine is inapplicable to attorney grievance complaints. The plaintiff further claims that, even if the doctrine generally is applicable to such complaints, he has satisfied the exhaustion requirement or, alternatively, that his case falls under an exception to the exhaustion doctrine. We disagree with each of these claims and, accordingly, we affirm the judgment of the Appellate Court.

I

The plaintiff first claims that because the committee is not an "agency" within the meaning of the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., the exhaustion doctrine does not apply to complaints filed with the committee.[17] The

---

that the decision of the reviewing committee denying your [motion] was final."

[16] The reviewing subcommittee had stayed the hearing on the merits of grievance complaint no. 95-0107 at the plaintiff's request.

[17] Under UAPA, a person who claims to be aggrieved by an action or decision of a state agency is required to exhaust his or her administrative remedies before seeking recourse in the Superior Court. See General Statutes § 4-183 (a).

committee does not dispute that it is not an "agency" for purposes of UAPA,[18] but nevertheless contends that the exhaustion doctrine is applicable to cases pending before it. We agree with the committee.

"The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law. . . . The doctrine provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. . . . The doctrine is applied in a number of different situations and is, like most judicial doctrines, subject to . . . exceptions. Application of the doctrine to specific cases requires an understanding of its purposes and of the particular administrative scheme involved." (Citations omitted; internal quotation marks omitted.) *McKart* v. *United States*, 395 U.S. 185, 193, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969).

"The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions. . . . The doctrine . . . furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review. . . . Most important, a favorable outcome will render review by the court unnecessary [because] as the United States Supreme Court has noted: A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene. *McKart* v. *United States*, [supra, 395 U.S. 195] . . . ." (Citations omitted; internal quotation marks omitted.) *Pet* v. *Dept. of Health*

---

[18] See *Weiss* v. *Statewide Grievance Committee*, 227 Conn. 802, 811, 633 A.2d 282 (1993) (statewide grievance committee not agency for purposes of UAPA); *Sobocinski* v. *Statewide Grievance Committee*, 215 Conn. 517, 526, 576 A.2d 532 (1990) (same).

*Services,* 207 Conn. 346, 351–52, 542 A.2d 672 (1988). Thus, "[t]he two part rationale for the exhaustion doctrine is: (1) to effectuate the legislative intent that the issue in question be handled in the first instance by local administrative officials in order to provide aggrieved persons with full and adequate administrative relief, and to give the reviewing court the benefit of the local board's judgment . . . and (2) to relieve courts of the burden of prematurely deciding questions that may be resolved satisfactorily through the administrative process." (Citation omitted; internal quotation marks omitted.) *Loulis* v. *Parrott,* 241 Conn. 180, 191, 695 A.2d 1040 (1997); see also *Connecticut Bank & Trust Co.* v. *Commission on Human Rights & Opportunities,* 202 Conn. 150, 155, 520 A.2d 186 (1987) (doctrine of exhaustion of administrative remedies is "designed to prevent piecemeal appeals of a litigant's claims before an administrative agency" [internal quotation marks omitted]). Moreover, "judicial review may be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise discretion or apply its expertise. . . . [N]otions of administrative autonomy require that the agency be given a chance to discover and correct its own errors. . . . [I]t is possible that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures." (Internal quotation marks omitted.) *Cannata* v. *Dept. of Environmental Protection,* 215 Conn. 616, 625, 577 A.2d 1017 (1990).

"Where a statutory requirement of exhaustion is not explicit, courts are guided by [legislative] intent in determining whether application of the doctrine would be consistent with the statutory scheme. *Patsy* v. *Florida Board of Regents,* 457 U.S. 496, 502 n.4 [102 S. Ct. 2557, 73 L. Ed. 2d 172] (1982)." (Internal quotation marks omitted.) *Coit Independence Joint Venture* v. *Federal Savings & Loan Ins. Corp.,* 489 U.S. 561, 579–

80, 109 S. Ct. 1361, 103 L. Ed. 2d 602 (1989). Consequently, "[t]he requirement of exhaustion may arise from explicit statutory language or from an administrative scheme providing for agency relief." (Internal quotation marks omitted.) *Howell* v. *Immigration & Naturalization Service*, 72 F.3d 288, 291 (2d Cir. 1995); accord *Kennedy* v. *Empire Blue Cross & Blue Shield*, 989 F.2d 588, 592 (2d Cir. 1993). Although the grievance procedures enumerated in General Statutes §§ 51-90 through 51-94 and Practice Book § 2-29 et seq. do not expressly require the exhaustion of administrative remedies before a judicial remedy may be sought, we nevertheless conclude that, in light of the comprehensive nature of the administrative scheme, exhaustion of the remedies available thereunder is a jurisdictional prerequisite to judicial relief.

A review of the administrative procedures applicable to attorney grievance complaints reflects the intricate nature of the scheme. When a grievant files a complaint alleging attorney misconduct, the complaint is first directed to the statewide bar counsel.[19] The statewide bar counsel then either forwards the complaint to a local grievance panel for investigation or refers the complaint to the chair of the committee, or an attorney designee of the chair, and to a nonattorney member of the committee. Practice Book § 2-32 (a). If the latter action is taken, the statewide bar counsel, in conjunction with the chair or the chair's attorney designee and the nonattorney member, shall, if deemed appropriate, dismiss the complaint on any one or more of eight enumerated grounds.[20] If the complaint is not dismissed,

[19] Both General Statutes § 51-90e (a) and Practice Book § 2-32 (a) provide that a complaint against an attorney shall be filed with the statewide bar counsel.

[20] These grounds are enumerated in Practice Book § 2-32 (a) (2) as follows:

"(A) [T]he complaint only alleges a fee dispute and not a clearly excessive or improper fee;

"(B) the complaint does not contain a claim of misconduct;

the local grievance panel must determine whether probable cause exists to believe that the attorney has engaged in professional misconduct. General Statutes § 51-90f (a); Practice Book § 2-32 (f). The committee itself, or a reviewing subcommittee, then reviews the local grievance panel's determination. General Statutes § 51-90g (a); Practice Book § 2-35 (c). If the reviewing subcommittee agrees with a local grievance panel's no probable cause determination, the reviewing subcommittee is authorized to dismiss the complaint. General Statutes § 51-90g (g); Practice Book § 2-35 (h).

Whenever probable cause for attorney misconduct is found, either the committee or a reviewing subcommittee conducts a public hearing on the complaint. General Statutes § 51-90g (a) and (b); Practice Book § 2-35 (c). The complainant and the respondent may be represented by counsel at the hearing and the respondent may present evidence and witnesses. General Statutes § 51-90g (b); Practice Book § 2-35 (d). If the reviewing subcommittee has conducted the hearing, it "may propose in its decision that the complaint be dismissed, that conditions be imposed in accordance with the rules established by the judges of the Superior Court, that the attorney be reprimanded or that the attorney be presented to the Superior Court for reprimand, suspension or disbarment." General Statutes § 51-90g (e); see

"(C) the complaint does not contain sufficient specific allegations on which to conduct an investigation;

"(D) the complaint is duplicative of a previously dismissed complaint;

"(E) the complaint alleges conduct occurring more than ten years prior to its filing;

"(F) the complaint alleges misconduct occurring in a pending superior court, appellate court or supreme court action and the court has not been made aware of the allegations or in which the court has been made aware of the allegations of misconduct and has not referred the matter to the statewide bar counsel or statewide grievance committee;

"(G) the complaint alleges personal behavior outside the practice of law which does not constitute a violation of the Rules of Professional Conduct;

"(H) the complaint alleges the nonpayment of incurred indebtedness."

also Practice Book § 2-35 (e). The complainant and the respondent may submit a statement to the committee in support of, or in opposition to, the reviewing subcommittee's proposed decision, and the committee may, in its discretion, request oral argument. General Statutes § 51-90h (a); see also Practice Book §§ 2-35 (g) and 2-36. Thereafter, the committee must "issue a decision dismissing the complaint, reprimanding the respondent, imposing conditions in accordance with the rules established by the judges of the Superior Court, directing the State-Wide Bar Counsel to file a presentment against the respondent or referring the complaint to the same or a different reviewing subcommittee for further investigation and proposed decision." General Statutes § 51-90h (b); see also Practice Book § 2-36.

These statutory and practice book provisions establish a comprehensive administrative mechanism for the investigation and resolution of attorney grievance complaints. See *Massameno* v. *Statewide Grievance Committee*, 234 Conn. 539, 554, 663 A.2d 317 (1995) (General Statutes § 51-90 et seq. and parallel rules of practice constitute comprehensive disciplinary scheme designed to safeguard administration of justice). Under this approach, fact-finding is undertaken at the administrative level and grievance complaints often are resolved or narrowed at that stage, thereby fostering judicial efficiency by delegating the responsibility for administering the grievance process in the first instance to the committee, and its reviewing subcommittees and local panels.[21] Allowing parties to circumvent the established grievance procedures, at least in the absence of a compelling justification for doing so, would so

---

[21] The committee deals with numerous attorney grievance complaints each year. According to the office of the statewide bar counsel, 1185 attorney grievance complaints were filed with the committee in fiscal year 1993. In fiscal year 1994, 1186 such complaints were filed, and in fiscal year 1995, 1156 were filed. K. Knox, "Understand the Grievance Process: It Could Happen To You," Conn. Law., March 1996, p. 8 n.1.

undermine the process as to render it ineffectual. Such a result reasonably could not have been contemplated by the framers of the administrative scheme, who created the committee and its subcommittees to act as an arm of the court in safeguarding the administration of justice, preserving public confidence in the system, and protecting the public and the court from unfit practitioners. Id.

Further support for the committee's contention regarding the applicability of the exhaustion doctrine to attorney grievance complaints may be found in the deference accorded committee decisions under the rules governing such complaints. For example, judicial review of a committee decision to reprimand an attorney, like judicial review of an agency determination under UAPA, is limited, both with respect to the committee's factual findings and its determination regarding the suitability of a reprimand as the sanction to be imposed. See Practice Book § 2-38 (f);[22] see also *Pinsky* v. *Statewide Grievance Committee*, 216 Conn. 228, 235, 578 A.2d 1075 (1990) (no reason why attorney's right to judicial review in disciplinary matter should be different than process accorded other professionals in disciplinary matters before licensing or disciplinary boards).

---

[22] Practice Book § 2-38 provides in relevant part: "Appeal from Decision of Statewide Grievance Committee or Reviewing Committee to Reprimand. . . . (f) Upon appeal, the court shall not substitute its judgment for that of the statewide grievance committee or reviewing committee as to the weight of the evidence on questions of fact. The court shall affirm the decision of the committee unless the court finds that substantial rights of the respondent have been prejudiced because the committee's findings, inferences, conclusions, or decisions are: (1) In violation of constitutional, rules of practice or statutory provisions; (2) in excess of the authority of the committee; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, rescind the action of the statewide grievance committee or take such other action as may be necessary. . . ."

Such deferential judicial review reflects the view of the rulemaking authorities that the committee and its subcommittees are to play an integral role in the attorney grievance process.

In sum, the sweeping nature of the grievance procedures adopted by the legislature and the judges of the Superior Court, the sound policy reasons for adopting such procedures, and the deference accorded certain committee determinations, indicate a clear intent on the part of the legislature and the judiciary that attorney grievance complaints shall be adjudicated administratively in advance of any judicial review. We conclude, therefore, that the doctrine of exhaustion of administrative remedies is applicable to the attorney grievance process.[23]

II

Having determined that the plaintiff was obligated to exhaust the remedies available to him under our statutory and practice book provisions governing attorney grievance complaints, we now turn to the plaintiff's claim that he has satisfied the exhaustion requirement. We conclude that he has not.

The plaintiff contends that he had exhausted his administrative remedies because the committee refused to examine the reviewing subcommittee's decision

[23] We also note that our conclusion is consistent with the Superior Court decisions that we have found to address this issue. See *Brignole* v. *Statewide Grievance Committee*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV 97 0572335S (December 29, 1997) (*Aurigemma, J.*) (doctrine of exhaustion of administrative remedies applies in attorney grievance context); *Doe* v. *Statewide Grievance Committee*, Superior Court, judicial district of New Haven, Docket No. CV 96 389085 (December 18, 1996) (*Sullivan, J.*) (same); *Melnick* v. *Statewide Grievance Committee*, Superior Court, judicial district of Fairfield, Docket No. 31 95 11 (June 26, 1995) (*Levin, J.*) (same); *Maco* v. *Statewide Grievance Committee*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV 94 546500S (June 14, 1995) (*Norko, J.*) (14 Conn. L. Rptr. 374) (same).

rejecting his motion to dismiss made pursuant to Practice Book § 2-32 (a) (2) (D) on the ground that grievance complaint no. 95-0107 was duplicative of the earlier complaints filed against the plaintiff and later dismissed. Specifically, the plaintiff claims that because the committee characterized the reviewing subcommittee's determination of that issue as "final"; see footnote 15 of this opinion; he had no further administrative remedies available to him.

This argument merits little discussion. The reviewing subcommittee never conducted a hearing on the merits of grievance complaint no. 95-0107. If, after such a hearing, the reviewing subcommittee had concluded that, as the plaintiff claims, he did not engage in professional misconduct as alleged in the complaint, the plaintiff will have achieved the result that he seeks, namely, a determination that the charges should be dismissed.[24] In such circumstances, it cannot be said that the plaintiff has exhausted his administrative remedies. Although the plaintiff might prefer to have had grievance complaint no. 95-0107 dismissed as duplicative rather than defend the complaint on its merits, his preference for a remedy at that earlier stage of the proceedings is of no moment when he has not exhausted other available administrative remedies. See *Hunt* v. *Prior*, 236 Conn. 421, 434, 673 A.2d 514 (1996). Accordingly, we reject the plaintiff's argument that he has satisfied the exhaustion requirement.[25]

---

[24] Of course, a proposed decision of the reviewing subcommittee dismissing the complaint is subject to review by the committee. See General Statutes § 51-90h (a) and (b); Practice Book §§ 2-35 (g) and 2-36.

[25] The committee also contends that the plaintiff's exhaustion claim must fail because the committee retained the authority to revisit the issue of duplicative complaints once the reviewing subcommittee had conducted a hearing on grievance complaint no. 95-0107 and forwarded its findings to the committee. We agree with the committee. At any hearing before the committee, the plaintiff will have the opportunity to present evidence regarding the duplicative nature of the complaint, and the committee will be required to consider the plaintiff's claim of duplicative complaints at that

### III

The plaintiff's final claim is that he should be excused from exhausting his administrative remedies because his case falls within several recognized exceptions to the exhaustion doctrine. We are not persuaded.

"Despite the important public policy considerations underlying the exhaustion requirement, we have grudgingly carved several exceptions from the exhaustion doctrine. . . . We have recognized such exceptions, however, only infrequently and only for narrowly defined purposes." (Citation omitted; internal quotation marks omitted.) Id., 432. "We have recognized that a party aggrieved by a decision of an administrative agency may be excused from exhaustion of administrative remedies if: recourse to the administrative remedy would be futile or inadequate; *Greenwich* v. *Liquor Control Commission,* 191 Conn. 528, 541–42, 469 A.2d 382 (1983); the procedures followed by the administrative agency are constitutionally infirm; *LaCroix* v. *Board of Education,* [199 Conn. 70, 79, 505 A.2d 1233 (1986)]; or injunctive relief from an agency decision is necessary to prevent immediate and irreparable harm. *Pet* v. *Department of Health Services,* supra, [207 Conn.] 370." *Polymer Resources, Ltd.* v. *Keeney,* 227 Conn. 545, 561, 630 A.2d 1304 (1993). The plaintiff asserts that he has satisfied the requirements of each of these three exceptions. We address, and reject, each of these claims in turn.

---

time. We acknowledge, however, that the committee's use of the word "final" in characterizing the decision of the reviewing subcommittee rejecting the plaintiff's claim; see footnote 15 of this opinion; reasonably may have caused the plaintiff to believe that his claim concerning duplicative complaints had been definitively and finally resolved against him. Consequently, we do not base our conclusion rejecting the plaintiff's exhaustion claim on the fact that the committee has the authority to reconsider the plaintiff's claim of duplicative complaints after it has received the reviewing subcommittee's findings and recommendations.

The plaintiff first contends that he need not comply with the exhaustion doctrine because both the reviewing subcommittee and the committee rejected his motion to dismiss for duplicative complaints, thereby rendering any further administrative remedies futile or inadequate. As we already have indicated, however, the plaintiff can obtain the remedy he seeks—dismissal of grievance complaint no. 95-0107—if, after a hearing on the merits of the complaint, it is not established, by clear and convincing evidence, that he engaged in professional misconduct in connection with his representation of Willis in 1988. "It is not the plaintiff's preference for a particular remedy that determines whether the remedy . . . is adequate . . . and an administrative remedy, in order to be 'adequate,' need not comport with the plaintiff's opinion of what a perfect remedy would be." (Internal quotation marks omitted.) *Hunt* v. *Prior*, supra, 236 Conn. 434; see also *O & G Industries, Inc.* v. *Planning & Zoning Commission*, 232 Conn. 419, 426, 655 A.2d 1121 (1995) ("an administrative remedy is adequate when it could provide the plaintiff with the relief that it seeks and provide a mechanism for judicial review"). Moreover, "[f]utility is more than a mere allegation that the administrative agency might not grant the relief requested. In most instances, [this court has] held that the failure to exhaust an administrative remedy is permissible only when the administrative remedy would be useless." *Concerned Citizens of Sterling* v. *Sterling*, 204 Conn. 551, 560, 529 A.2d 666 (1987).[26] In light of the fact that it ultimately may be determined that the allegations of misconduct contained in grievance complaint no. 95-0107 lack merit, the

---

[26] In addition, after the reviewing subcommittee conducts its hearing on the merits of grievance complaint no. 95-0107, the committee may be persuaded to reconsider the reviewing subcommittee's decision on the plaintiff's claim of duplicative complaints. See footnote 25 of this opinion; see also *Polymer Resources, Ltd.* v. *Keeney*, supra, 227 Conn. 562 ("mere conclusory assertion that an agency will not reconsider its decision does not excuse compliance with the exhaustion requirement").

plaintiff has failed to establish that the administrative remedies still available to him necessarily are futile or inadequate.

The plaintiff next claims that his constitutional due process rights were violated because the statewide bar counsel failed to follow the procedural rules governing attorney grievance complaints. Specifically, the plaintiff alleges that the statewide bar counsel improperly failed to forward the grievance complaint to the chair of the committee, or to an attorney designee of the chair, and to a nonattorney member of the committee for preliminary screening and possible dismissal as provided by Practice Book § 2-32 (a) (2) (D).[27] This claim also is without merit. Under Practice Book § 2-32 (a); see footnote 13 of this opinion; the statewide bar counsel has the discretion *either* to forward the complaint to a local grievance panel for investigation and review; Practice Book § 2-32 (a) (1); *or* to refer the complaint to the chair of the committee, or to the chair's attorney designee, and to a nonattorney member of the committee for screening and possible dismissal. Practice Book § 2-32 (a) (2). In this case, the statewide bar counsel opted to forward the complaint to the local panel in accordance with the express provisions of the rule. Contrary to the plaintiff's claim, nothing in Practice Book § 2-32 mandates that the statewide bar counsel refer an allegedly duplicative complaint for preliminary screening under Practice Book § 2-32 (a) (2). Furthermore, an attorney who is the subject of a duplicative complaint does not have an absolute right, under Practice Book § 2-32 (a) (2) (D), to dismissal of that complaint. On the contrary, Practice Book § 2-32 (a) (2) provides that a complaint shall be dismissed only *"if deemed appropriate"*; (emphasis added); by the chair

[27] We note that the plaintiff has not challenged the constitutionality of the administrative scheme, either as applied to duplicative complaints generally or to grievance complaint no. 95-0107.

of the committee, or the chair's attorney designee, and the nonattorney member acting in conjunction with the statewide bar counsel. Because the statewide bar counsel acted properly in referring the matter to a grievance panel under what is now Practice Book § 2-32 (a) (2) (D), the plaintiff's due process claim must fail.

Finally, the plaintiff contends that he should be excused from failing to exhaust his administrative remedies because injunctive relief is necessary to avoid immediate and irreparable harm to his practice and reputation. He claims, in conclusory terms, that a public hearing[28] on the allegedly duplicative complaint would irreparably damage his professional standing and reputation and also cause him unnecessary expense. We rejected a similar claim in *Pet* v. *Dept. of Health Services*, supra, 207 Conn. 370–73, wherein we concluded that any harm to the plaintiff physician that might arise from further disciplinary proceedings before the department of health services did not excuse the plaintiff from exhausting his administrative remedies.[29] As we stated in *Pet,* "[t]he administrative framework was not designed for instant resolution despite the foreseeability of physicians suffering temporary problems due to the pendency of serious charges against them."[30] Id.,

[28] In accordance with committee procedures, "[a]ll hearings following a determination of probable cause shall be public and on the record." Practice Book § 2-35 (c); see also General Statutes § 51-90g (b).

[29] In *Pet,* "[t]he plaintiff offered considerable evidence that he claims demonstrates that he has suffered irreparable injury . . . . The plaintiff claim[ed] that he [was] subject to being disqualified from a prepaid health insurance program; his malpractice insurance was not renewed for a time and it took a lengthy resubmission and reconsideration process to do so; his name was excluded from a referral list of physicians; his practice . . . suffered a decrease in referrals from other physicians and a decrease in new patients. The plaintiff contend[ed] that the negative impact on his practice [would] continue until the pending charges [were] resolved and that this call[ed] for injunctive relief." *Pet* v. *Dept. of Health Services,* supra, 207 Conn. 372–73.

[30] We noted in *Pet* that "[i]t is possible that a hearing that has dragged on without resolution because of inexcusable actions by the [agency] could

373; see also *Statewide Grievance Committee* v. *Presnick*, 215 Conn. 162, 170–71, 575 A.2d 210 (1990) (any damage to attorney's reputation arising from committee's public dissemination of probable cause determination was neither irreparable nor violative of attorney's due process rights because attorney had opportunity to refute charges at subsequent hearing). Although we acknowledge that an attorney who is the subject of a grievance complaint may suffer some harm merely by virtue of a probable cause determination, "[a] party seeking injunctive relief has the burden of alleging and proving *irreparable* harm and lack of an adequate remedy at law." (Emphasis added; internal quotation marks omitted.) *Advest, Inc.* v. *Wachtel*, 235 Conn. 559, 562–63, 668 A.2d 367 (1995). The plaintiff has failed to establish that any conceivable harm he might suffer as a result of a public hearing on grievance complaint no. 95-0107 would rise to a level warranting equitable intervention by the Superior Court. In such circumstances, the very hearing that the plaintiff seeks to avoid affords him an adequate legal remedy. Accordingly, the plaintiff cannot bypass available administrative remedies simply because of his desire to avoid a public hearing before the reviewing subcommittee.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

rise to the level of irreparable injury . . . ." *Pet* v. *Dept. of Health Services,* supra, 207 Conn. 373. No such claim has been made in this case. Indeed, the hearing on the merits of grievance complaint no. 95-0107 was stayed at the request of the plaintiff. See footnote 16 of this opinion.