[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO DISMISS
Dr. O'Halloran brought this action challenging the credentialing process and actions of Charlotte Hungerford Hospital claiming that: (1) the Bylaws of the Medical Staff provide the administrative process and remedy for credentialing issues; and (2) he has retained his appointment to the Medical Staff and all of his clinical privileges during the credentialing process. The defendants claim that because Dr. O'Halloran came to this Court before the completion of the administrative process set forth in the Bylaws, this Court lacks subject matter juris diction and the case must be dismissed.
Dr. James O'Halloran is a physician licensed by the State of Connecticut and has been a member of the Active Medical Staff of the Charlotte Hungerford Hospital. The term of his current Medical Staff appointment expired on March 1, 1999, and there is a recommendation by the Hospital's Patient Care Conference Committee ("PCCC") that Dr. O'Halloran not be reappointed to the Medical Staff. However, prior to this recommendation becoming effective, Dr. O'Halloran has the right under the Bylaws to a CT Page 6095 hearing and appellate review.On April 7, 1999, Dr. O'Halloran gave formal notice that he will appeal and he requested a hearing. During the appeal process, Dr. O'Halloran continues as a member of the Active Medical Staff.
On February 25, 1999, he commenced this action seeking to recover damages and injunctive relief for injuries he allegedly suffered as result of certain actions of the Hospital that he claims wrongly deprived him of Active Medical Staff privileges. Specifically, plaintiff complains that the January 21, 1999 recommendation of the Hospital's Ethics, Privileges and Credential's Committee ("EPC") that he be moved from the Active Staff to the Consulting Staff effective March 1, 1999 (the date his current appointment would expire) was made in violation of the Bylaws. He has not been deprived of his appointment or any of his clinical privileges.
The Medical Staff Bylaws were adopted by the Medical Staff and the Board of Governors of the Hospital to provide for the organization of the Medical Staff and to provide "a framework for self-governance in order to permit the Medical Staff to discharge its responsibilities in matters involving quality of medical care, and to govern the orderly resolution of those purposes." Also, the Hospital is required to adopt and follow the Bylaws by State Regulation. (Regs., Conn. State Agencies § 19-13-D3(b) (1)(A)). The Bylaws provide that Active Medical Staff Members are not appointed for an indefinite period of time but must apply biannually for reappointment. Dr. O'Halloran is an Active Medical Staff Member and, accordingly, he applied for reappointment in accordance with the Bylaws.
The first committee step in the reappointment process involves the EPC. This committee reviews the application and additional information regarding, inter alia, evidence of unethical conduct, relationships with other practitioners, current clinical competence, the Member's "complete experience" at the Hospital, and adherence with the Bylaws during the period of appointment. Upon completion of a comprehensive review, the EPC makes one of three recommendation: (1) appointment and staff privileges should be renewed; (2) appointment and staff privileges should be denied altogether; or (3) the member's rank or clinical privileges should be reduced.
The EPC recommendation, along with supporting reasons and documentation, is then forwarded to the Medical Staff Executive CT Page 6096 Committee ("MEC") where a second review of the application is conducted and a second recommendation is made. This recommendation is forwarded to the PCCC which conducts a third review of the application and makes the ultimate recommendation. If the PCCC recommends reappointment, the application is forwarded to the Board of Governors. If the recommendation of the PCCC is to deny reappointment or reduce rank or clinical privileges (an "adverse recommendation"), the PCCC notifies the applicant stating the reasons for their recommendation.
Upon notification of an adverse recommendation, the applicant may request a fourth review of his application by the Hearing Committee ("HC"). This fourth review is a hearing during which the applicant, who may be represented by counsel, is allowed to answer the formal, written charges by introducing evidence and cross-examining witnesses. At the conclusion of the hearing, the HC submits a written report to the applicant and to the Board of Governors detailing its recommendation. Upon receipt of an adverse HC report, the applicant may exercise his right to present a rebuttal to the HC report in the form of a written statement and/or oral presentation before the Board of Governors. Following the presentation of the applicant's response to HC report, the Board of Governors then subjects the application to the fifth and final ("appellate") review by considering the HC report and making the final determination.
In this case, Dr. O'Halloran has failed to exhaust the administrative process set out above insofar as he purports to seek judicial review of the EPC recommendation which is only the first of five levels of review of plaintiffs reappointment application provided by the Bylaws. He continues to pursue this action even though he has requested a hearing to challenge the PCCC recommendation.
With respect to Dr. O'Halloran's reappointment application, the EPC recommended that his privileges be reduced by moving him to a Staff category without admitting privileges. Pursuant to the Bylaws, this recommendation was forwarded to the MEC for review. The MEC did not agree with the EPC recommendation and instead recommended that plaintiffs privileges be denied altogether. Thereafter, a third review of plaintiffs reappointment application was undertaken by the PCCC.
At the February 10, 1999 meeting of the PCCC, the MEC recommendation was not approved; instead, the PCCC sent the CT Page 6097 matter back to the MEC so that: (1) an investigation could be conducted into a recent incident involving Dr. O'Halloran: and (2) more details could be provided to the PCCC by the SEC about Dr. O'Halloran. At that time, the PCCC recommended to the Board that Dr. O'Halloran's appointment and clinical privileges be extended until April 1, 1999. On March 11, 1999, after reviewing additional information provided by the MEC the PCCC voted to recommend that Dr. O'Halloran not be reappointed to the Active Medical Staff. On March 24, 1999, the Board adopted the recommendation of the PCCC that Dr. O'Halloran's privileges be extended during the administrative process. Dr. O'Halloran was notified of the PCCC decision by certified mail and he requested a hearing before an impartial committee to contest the adverse recommendation. Dr. O'Halloran was also notified that since he requested a hearing, the board of Governors will extend his present appointment to the Active Medical Staff until July 31, 1999, in order to provide him with adequate time within which to complete the appellate process in accordance with the Bylaws.
Dr. O'Halloran has failed to exhaust his available administrative remedies. Therefore, this Court does not have subject matter jurisdiction and the case must be dismissed. A basic principle of administrative law requires that a litigant must exhaust all available administrative procedures afforded to him before seeking judicial relief as summarized by our Supreme Court: "[N]o one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Johnson v. Statewide Grievance Committee,248 Conn. 87, 95 (March 16, 1999) (quoting McKart v. United States,395 U.S. 185, 193 (1969)).
In addition, plaintiff's claim that the Hospital failed to comply with the Bylaws is not ripe for adjudication. It is settled law that judicial review of administrative decision regarding hospital staff privileges is limited to the narrow question of whether the hospital substantially complied with the bylaws in arriving at its credentialing decision. Owens v. NewBritain General Hospital, 229 Conn. 592, 607 (1994). However, judicial review of the credentialing process may not be had until a final decision has been rendered with respect to plaintiffs reappointment application. Because plaintiffs application is currently pending, plaintiff has not been injured, the Court cannot review the Hospital's compliance with the Bylaws, and plaintiff's claim is simply not ripe. CT Page 6098
It is black letter law that "if an adequate administrative remedy exists, it must be exhausted before Superior Court will obtain jurisdiction to act in the matter." Cummings v. Tripp,204 Conn. 67, 75 (1987) (citations omitted). The exhaustion requirement reflects "the legislative intent that such issues be handled in the first instance by local administrative officials in order to provide aggrieved persons with full and adequate administrative relief and to give the reviewing court the benefit of the local board's judgment." O G Industries, Inc. v. P Z,232 Conn. 419, 425 (1995). To that end, the exhaustion requirement performs the critical function of fostering "an orderly process of administrative and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions." Pet v. Dept. of Health Services, 207 Conn. 346,351 (1988) (internal citations omitted).
Judge Gaffney followed this principle and dismissed a case virtually identical to the one at bar. Carrese v. GriffinHospital, 1995 WL 731662 (Conn.Super. 1995). In Carrese, a plaintiff physician moved for an order enjoining the defendant hospital from rendering a final decision regarding the termination of his privileges pursuant to the administrative procedures set forth in the bylaws. The Court dismissed the case for lack of subject matter jurisdiction finding that the plaintiff had not exhausted the administrative procedures provided for by the bylaws. The same result in required here because the exhaustion doctrine requires that Dr. O'Halloran follow the administrative procedures provided by the Bylaws to their completion, which includes a hearing and appellate review.
Further, our Supreme Court recently examined the exhaustion doctrine and found it applicable even though the administrative process at issue is not controlled by a state agency. Johnson v.Statewide Grievance Committee, 248 Conn. 87 (March 16, 1999). The holding in Johnson requires that the present case be dismissed.
In Johnson, an attorney sought an injunction prohibiting the Statewide Grievance Committee from taking further action on a grievance that had been filed against him. In response, the committee argued that the court lacked subject matter jurisdiction because the plaintiff commenced the action before the grievance procedures had been exhausted. The trial court agreed and dismissed the action finding that it did not have subject matter jurisdiction. CT Page 6099
On appeal, the attorney's primary argument was that the case should not have been dismissed for lack of subject matter jurisdiction because "the committee is not an agency within the meaning of the Uniform Administrative Procedure Act ("UAPA") and therefore, the exhaustion doctrine is inapplicable. Johnson,248 Conn. at 94. The court disagreed, finding that the applicability of the exhaustion doctrine is not dependent upon the involvement of a state agency. The Johnson Court held that were administrative decisions are subject to judicial review and the finding of persons with specialized knowledge will assist the courts, the parties must exhaust their administrative remedies as a prerequisite to judicial review. Id. at 99-101.
In reaching their decision, the Court considered the purposes of the exhaustion requirement: (1) to effectuate the legislative intent that the issue be handled in the first instance by local administrative officials so that the aggrieved person is given "full and adequate administrative relief' and to "give the reviewing court the benefit of the local board's judgment,"Johnson at 96; and (2) "to relieve courts of the burden of prematurely deciding questions that may be resolved satisfactorily through the administrative process." Id. Applying those principles to the grievances process, the Johnson court concluded that:
 The sweeping nature of the grievance procedures adopted by the legislature and the judges of the Superior Court, the sound policy reasons for adopting such procedures, and the deference accorded certain committee determinations, indicate a clear intent on the part of the legislature and the judiciary that attorney grievance complaints shall be adjudicated administratively in advance of any judicial review.
Johnson at 101.
This Court finds that Dr. O'Halloran must exhaust the administrative procedures provided for by the Bylaws because, as in Johnson, the purposes and requirements of the doctrine would be served.
• First, the Bylaws provide an opportunity for full and adequate administrative relief and are required by law. The General Assembly, through the Connecticut Department of Public Health, has directed that all hospitals "adopt and abide by" medical staff bylaws and that the bylaws "reflect what the medical community considers to be crucial to the effective administrative hospital and the provision of quality CT Page 6100 care by physicians whose performance has earned them privileges." Gianetti v. Norwalk Hospital, 211 Conn. 51, 60 (1989); See also Owens, 229 Conn. at 604. Our Supreme Court's confidence in the bylaw process has led it to conclude that judicial review of hospital decision is expressly limited to whether the hospital has substantially complied with the bylaws because they "provide, outside of the judicial system, a fair method for making decisions concerning staff privileges." Owens, 229 Conn. at 604
(emphasis added). If this Court does not require exhaustion of the bylaws, such a decision will certainly lead to the "frequent and deliberate flouting of administrative processes" and will encourage other employees to ignore its procedures. Cannata v. Dept. Of Environmental Protection, 215 Conn. 616, 625 (1990).
• Second, the administrative process is comprehensive and will therefore give the reviewing court the benefit of the hospital's judgment. Such benefit is invaluable because our Supreme Court has held that "determinations of the professional competence and capability of a physician to practice medicine in a hospital setting" are of a specialized nature and should therefore be left to "the expertise of the hospital's staff and administration." Owens, 229 Conn. at 607.[1]
Moreover, without requiring exhaustion, "judicial review may be hindered by the failure of a litigant to allow the agency to make a factual record, or to exercise discretion or apply its expertise . . . Notions of administrative autonomy require that the agency be given a chance to discover and correct its own errors . . ." Cannata, 215 Conn. at 625.
• Third, requiring exhaustion of administrative remedies will relieve courts of the burden of deciding questions that may be adequately resolved through the administrative process because "a complaining party may be successful in vindicating his rights in the administrative process" and if so, "the courts may never have to intervene." Johnson,
at 95 (quoting McKart v. United States, 395 U.S. 185, 193 (1969)). Additionally, requiring courts to resolve questions that could be resolved through the administrative process encourages "unnecessary judicial interference with those whose duty it is to make the decisions and who have the necessary expertise with which to act" and is to be avoided. Owens, 229 Conn. at 606.
In this instant case Johnson requires Dr. O'Halloran to exhaust his administrative remedies. The administrative procedures set forth in the Bylaws are as "comprehensive" as those in Johnson: When a Medical Staff member seeks reappointment, there are no fewer than three committee reviews of CT Page 6101 the reappointment application. Additionally, an applicant is provided a full hearing and appellate review of the hearing committee's determination. And, Dr. O'Halloran has requested that a hearing be held and he remain on the Active Medical Staff. Dr. O'Halloran has failed to exhaust his administrative remedies. Accordingly this Court lacks subject matter jurisdiction and the case must be dismissed.
Even if this Court determined that Dr. O'Halloran need not exhaust his administrative remedies, the case must be dismissed for lack of subject matter jurisdiction because plaintiff's claim is not ripe, and therefore, not justiciable. Kleinmann v.Marshall, 192 Conn. 479, 484 (1984) (a case that is not justiciable must be dismissed for lack of subject matter jurisdiction).
First, plaintiff has not been injured by the defendants because he retains his position as an Active Medical Staff Member.
There is no actual controversy because O'Halloran has not been injured. A hypothetical injury or threat is not a ripe or justiciable claim. United Public Workers v. Mitchell,330 U.S. 75, 89-90 (1947). Here, Dr. O'Halloran has not suffered an injury because he still has full credentials at the Hospital. Because the process is ongoing and Dr. O'Halloran has not been injured, his claim is not ripe for adjudication and, thus, is not justiciable.
The plaintiff has not been injured by the credentialing process and, since the process is ongoing, and there is not controversy for the Court to decide. This Court dismisses the case because it is not ripe for adjudication.
For all the foregoing reasons, the Motion To Dismiss is granted.
BY THE COURT
Walter M. Pickett, Jr. Judge Trial Referee