HARWINTON DRILLING AND ENGINEERING Co., INC., ET AL. *v.* PUBLIC UTILITIES CONTROL AUTHORITY ET AL.

PETERS, ARMENTANO, SPONZO, SPADA and BRENNAN, Js.

Argued March 12—decision released August 10, 1982

*John L. Gerardo,* with whom, on the brief, was *John M. Massameno,* for the appellants (plaintiffs).

*Robert S. Golden, Jr.,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellee (named defendant).

*Anne U. MacClintock,* for the appellee (defendant Southern New England Telephone Company).

SPADA, J. The plaintiffs, business subscribers to telephone and telecommunication services offered by the Southern New England Telephone Company, (hereinafter the company), have appealed from the trial court's dismissal of their action to enjoin implementation of a March 27, 1979 decision rendered by the department of public utilities control (hereinafter the DPUC). Prior to the DPUC decision, the towns of Harwinton and Burlington were served by one regional school district but by more than one telephone exchange, requiring a toll charge for calls made between them. As a consequence of the March, 1979 decision, the DPUC eliminated the toll barrier between Burlington and Harwinton and created a single new telephone exchange for both towns.

On September 11, 1978, after giving notice entitled "Investigation to Consider Possible Remedies to Telephone Toll Call Exchange Barriers Between Towns Forming Regional School District No. 10,"[1] the DPUC conducted a generic hearing

---

[1] A generic hearing concerning Region 10, Harwinton and Burlington, was held at Hartford.

which was attended by the DPUC and its consumer counsel, the company and four intervenors.[2] That meeting was continued to November 29, 1978, at which time the company explained the five plans presented at prior meetings together with a sixth plan proposing a new foreign exchange.[3]

On March 27, 1979, the DPUC rendered its decision in which it concluded that "substantial community and social benefits" would be derived from the creation of a new exchange for the towns of Burlington and Harwinton. The DPUC conditioned implementation of its decision upon a favorable response to a canvass of the customers comprising the new exchange. A ballot was prepared explaining that the creation of a new exchange would require telephone number changes for all residents and assessments of different rate categories for basic monthly service, based on the appropriate existing rate schedule applicable to the proposed new exchange classification. Completed in July, the canvass disclosed that the required plurality supported implementation of a new exchange.

After realizing the impact the DPUC's decision would have upon their various businesses, the plaintiffs, in October of 1980, petitioned the DPUC for a reconsideration of its March, 1979 decision. The DPUC rejected the petition after a hearing attended by representatives of the DPUC, the

___

[2] One of the named plaintiffs in this action, James Lucas, attended the meeting of November 29, 1978, and objected to the proposed change of telephone numbers.

[3] Foreign exchange service is defined by SNETCO Tariffs, Part II, Section 7, Sheet 1 as "exchange service furnished from an exchange other than the one which normally serves the area in which the subscriber is located."

company and the plaintiffs. Approximately one month later, on November 26, 1980, the plaintiffs instituted this action in the Superior Court seeking (1) a judgment declaring the March decision a nullity; (2) a permanent injunction prohibiting the defendants from implementing the March decision; (3) money damages; and (4) other appropriate relief. Thereafter, each defendant filed timely motions to dismiss, which the trial court granted on January 6, 1981. The plaintiffs have appealed from the trial court's judgment of dismissal.

In addressing the merits of this appeal, we must decide whether the plaintiffs' failure to pursue appellate review of the March, 1979 DPUC decision under the provisions of the Uniform Administrative Procedure Act (hereinafter the UAPA) foreclosed the trial court from exercising jurisdiction. After surveying relevant case law, we hold that the trial court properly dismissed the plaintiffs' action for want of jurisdiction.

This court has "repeatedly affirmed the principle that when an adequate administrative remedy is provided by law, it should be exhausted." *Connecticut Life & Health Ins. Guaranty Assn. (CLHIGA)* v. *Jackson,* 173 Conn. 352, 357, 377 A.2d 1099 (1977); see *Conto* v. *Zoning Commission,* 186 Conn. 106, 114–15, 439 A.2d 441 (1982); *Rybinski* v. *State Employees' Retirement Commission,* 173 Conn. 462, 472, 378 A.2d 547 (1977). A policy of judicial restraint underlies the doctrine of exhaustion: "The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions. To allow a party . . . to

bypass the entire process . . . would be to interject an unnecessary and potentially confusing element into an otherwise well-defined area of the law." *CLHIGA* v. *Jackson,* supra, 358–59.

From the exhaustion doctrine, however, we have grudgingly carved several exceptions. For example, we have permitted parties who have not exhausted their administrative remedies to bypass the statutorily mandated appeal route where: the constitutional propriety of an agency ruling is raised; *Connecticut Light & Power Co.* v. *Norwalk,* 179 Conn. 111, 117, 425 A.2d 576 (1979); the administrative action is void for lack of notice; *Smith* v. *F.W. Woolworth Co.,* 142 Conn. 88, 94–95, 111 A.2d 552 (1955); the relief sought and issues raised are distinctly equitable; *Bianco* v. *Darien,* 157 Conn. 548, 554–55, 254 A.2d 898 (1969); the validity of the regulations on the appropriateness of jurisdiction is challenged by way of a declaratory judgment action; *Aaron* v. *Conservation Commission,* 178 Conn. 173, 179, 422 A.2d 290 (1979); the remedies available pursuant to the statutory route of appeal are either futile or inadequate. *Kosinski* v. *Lawlor,* 177 Conn. 420, 425, 418 A.2d 66 (1979).

In their brief, the plaintiffs concede that they did not exhaust their administrative remedies prior to instituting their independent lawsuit in the Superior Court. They are now attempting to bring themselves within one of the above enumerated exceptions.[4] The plaintiffs argue that they were "unaware" of the violation of their rights on the

---

[4] The plaintiffs' subordinate contention that the defendant telephone company's failure to file rate schedules under General Statutes § 16-19 (a) creates an additional exception to our exhaustion doctrine is without merit. This claim was not raised in

date their appeal should have been taken, and contend that their ignorance was unavoidable because the DPUC failed to afford them procedural due process. Specifically, they claim that the DPUC's failure to notify them of the potential ramifications of its decision precluded them from filing a timely appeal under the provisions of the UAPA.[5] Accordingly, they assert that the DPUC's failure to notify them of the ramifications of its decision rendered that decision void.

The trial court concluded that the DPUC provided the plaintiffs with adequate notice in all respects. This conclusion is amply supported by both the pertinent law and the underlying facts. The notice required by General Statutes § 4-177 need not include speculation about potential ramifications of an agency's decision. To satisfy the requirements of the UAPA, notice need only include: "(1) A statement of the time, place, and nature of the hearing; (2) a statement of the legal authority and jurisdiction under which the hearing is to be held; (3) a reference to the particular sections of the statutes and regulations involved; (4) a short and plain statement of the matters asserted. . . . Thereafter upon application a more definite and detailed statement shall be furnished." General Statutes § 4-177 (b). The record discloses that the DPUC

the trial court. *Rybinski* v. *State Employees' Retirement Commission,* 173 Conn. 462, 466, 378 A.2d 547 (1977). Moreover, the contention cannot be the basis to circumvent the UAPA and is readily reviewable under the jurisdiction of the UAPA.

[5] General Statutes § 4-183 (b) states, in pertinent part: "Proceedings for such appeal shall be instituted by filing a petition in superior court . . . within forty-five days after mailing of the notice of the final decision of the agency . . . ." When the DPUC rendered its decision in March of 1979, this statute provided for a thirty day period within which to appeal. The thirty day period was extended to forty-five days by Public Acts 1979, No. 79-163.

gave adequate notice of its September 11, 1978 hearing. Moreover, the plaintiffs did not apply for "a more definite and detailed statement." Thus, we find that the DPUC provided sufficient and reasonable notice, and that its ensuing decision was not void for lack of adequate notice.

The plaintiffs additionally seek the benefit of an exception to the exhaustion doctrine by alleging that the DPUC decision was unconstitutional because it violated their due process rights. As stated above, we find DPUC compliance with the notice requirements of the UAPA. Furthermore, we have not previously excused the failure to take a direct appeal merely because of the sparsity of the information contained in the notice. *Connecticut Light & Power Co.* v. *Norwalk,* supra, 116. Moreover, the plaintiffs have established no substantive liberty or property interest to which due process guarantees may attach.[6] See *Perry* v. *Sindermann,* 408 U.S. 593, 599, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972) ; *Board of Regents of State Colleges* v. *Roth,* 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).

Instead, the plaintiffs have alleged aggrievement and future money damages; this alleged loss is adequately protected under the UAPA, which entitles parties so aggrieved to judicial review by way of appeal. The plaintiffs present little or no justification for bypassing the review procedure provided in the UAPA. They declare that they did not pursue a direct appeal under the UAPA because

---

[6] We note further that the plaintiffs failed to meet the two-pronged test of the constitutional infirmity exception to the exhaustion doctrine, which we enunciated in *Connecticut Light & Power Co.* v. *Norwalk,* 179 Conn. 111, 116, 425 A.2d 576 (1979).

they "were unaware at the time of the appeal period . . . that errors of such dimensions had been committed in this case." The plaintiffs claim to be excepted from the UAPA because of their failure to appeal within thirty days after the March, 1979 decision.

We cannot countenance the institution of a separate action, independent of the UAPA, simply because one party has concluded that the statutory appeal period has lapsed. Permitting a bypass of the UAPA for this speculative reason would preclude a testing of the plaintiffs' assertion that the appeal period had expired. If the plaintiffs' claim of defective notice were upheld before a UAPA reviewing court, the issue of whether the appeal was timely might well prove moot. Moreover, even if the UAPA reviewing court had found the notice to be sufficient, the plaintiffs would not have been precluded from arguing that the appeal period commenced when the ramifications of the decision became reasonably known to them.

We reiterate that although the UAPA is not the exclusive reserve for administrative appeals, "the legislature did indicate its intention that the agencies and the [Superior Court] be the principal forum for deciding such questions by stating that the UAPA applies to all agencies and agency proceedings not specifically exempted . . . ."[7] *CLHIGA* v. *Jackson,* supra, 357; see General Statutes § 4-185. Moreover, we emphasize that the failure to pursue a statutory remedy of appeal

---

[7] The DPUC is not an agency expressly exempt from the operation of the UAPA.

under the UAPA cannot form the basis of an independent action in equity. *Boucher Agency, Inc.* v. *Zimmer,* 160 Conn. 404, 410, 279 A.2d 540 (1971).

Absent a showing of immediate and irreparable harm, a party who is aggrieved by a decision of an administrative agency may not institute an independent action for the purpose of bypassing the UAPA appeal process. In instances where the hearings before administrative agencies have been exhausted, there can be no judicial bypass of the UAPA absent allegations and evidence of immediate and irreparable harm. Because each of the errors claimed is properly reviewable under the UAPA, the trial court properly declined to exercise jurisdiction.

There is no error.

In this opinion the other judges concurred.