[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE DEFENDANTS' MOTION TO DISMISS
The plaintiffs own real property in Farmington which is a residential subdivision known as Old Canal Crossing. On November 9, 1987, the plaintiffs and the defendant, Unionville Water Company (Company), a public utility furnishing water in the Town of Farmington, entered into an extension Agreement (Agreement) for the supply of water to the property. The plaintiffs, thereafter, on May 10, 1989, filed a petition with the State of Connecticut Department of Public Utility Control (DPUC) claiming that certain fees, charges and other conditions of the Agreement were improper. The Department held a hearing pursuant to C.G.S. section 16-20, which empowers it to set maximum rates, charges and the conditions of service to customers of public utilities[1]. The DPUC rendered its decision on March 15, 1990, and neither party appealed to the Superior Court pursuant to the Administrative Procedures Act (APA), C.G.S. section 4-183(b).
The plaintiffs brought this civil action on July 17, 1991, claiming that the fees, charges and conditions of the Agreement were "illegal" and seeking relief on the legal theories CT Page 10408 of breach of contract (Count One) and conversion (Count Two). Plaintiffs seek relief by way of 1) money damages and 2) rescission of contract.
A lack of subject matter jurisdiction over the controversy is properly raised by a Motion to Dismiss. Connecticut Practice Book Section 143(1). Park City v. Commission on Hospitals and Health Care, 210 Conn. 697, 702 (1989). The lack of such jurisdiction cannot be waived, and the court shall dismiss any action over which it lacks subject matter jurisdiction. Connecticut Practice Book Section 145.
A comparison of the complaint filed in this action with the DPUC decision illustrates that each and every one of the allegations of "illegal" conduct made in this action were addressed and decided by the DPUC. The following is a list of these allegations made in this action previously decided by the DPUC.
1. Excessive well development fees.
2. Excessive tapping fees.
 3. Improper extraction of easements as a condition of supplying service.
 4. Excessive engineering and counsel fees.
 5. Improper calculation of reimbursements and rebates.
6. Improper accounting for project costs.
 7. Improper calculation of income tax rate.
The DPUC decided the plaintiffs' petition under the legislative authority granted to it by section 16-20, which states that it shall "prescribe the service to be furnished by the company to the person and the conditions under which, and the maximum rate or charge at which, the service shall be furnished."
Upon receiving the plaintiffs' petition, the DPUC was, by statute, obligated to and did hold a hearing to determine whether the Company had failed to furnish adequate service at reasonable rates. The DPUC is empowered to set the conditions under which service shall be provided and to prohibit the Company from charging rates or imposing conditions which exceed those prescribed. C.G.S. section 16-20. CT Page 10409
The legislature, by enacting a statutory scheme found in Chapter 277 of the General Statutes, provided an administrative remedy for persons who are aggrieved by the actions of public utilities. The defendant is such public utility. C.G.S. section 16-2(4)(10). The legislature also provided that persons aggrieved by a decision of the DPUC may seek judicial review by appealing the adverse decision to the Superior Court pursuant to C.G.S. section 4-183. See, C.G.S. section 16-35.[2]
The complaint does not mention that these issues have been litigated over the course of some days of hearings before the DPUC. The complaint does not mention the DPUC order directed to the plaintiff to grant certain easements to the defendant Company as a condition of service. The complaint does not allude to any fact or facts which explain its failure to appeal the DPUC decision to the Superior Court as is provided by section 4-183 of the Administrative Procedures Act.
In their memorandum to the court [MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS] November 12, 1991, plaintiffs make the claim that
 "Since the above DPUC findings were favorable to the Plaintiffs, they the Plaintiffs, were obviously not aggrieved by the DPUC's decision. In fact, it is the impact of these findings that enable the Plaintiffs to bring this present action."
In its Decision the DPUC observed the following:
 The Petitioner (Plaintiff) had not granted easements to the Company as agreed to in the main extension agreement, claiming that the Company had requested a wider easement than normally is required for a main extension of this size. The easement would affect one of the building lots in the Petitioner's development by reducing the size of the dwelling that could be built there. The Petitioner reasserted his argument during oral arguments that the easement required by the company is excessive and detracts from the value of the lot. He further indicated that he is not prepared to grant the easement under the current conditions.
The easements required by the Company CT Page 10410 comply with Conn. Agencies Regs. 16-262m-8, paragraphs 15 through 20, which address separation distances for sewer and water utilities. In general, the Department requires applicants for main extensions to provide, when necessary, a right of way or easement satisfactory to the Company, free of cost to the Company, allowing it to install, maintain, extend and replace mains and other necessary facilities and make connection thereto. The Company will not be required to finalize the Petitioner's account prior to the Petitioner's granting the easements as provided in the extension agreement. Therefore, the Petitioner will be directed to grant the required easements to the Company prior to his account being closed. (Emphasis added.)
The DPUC concluded its Decision as follows:
VI. CONCLUSION AND ORDERS
A. Conclusion
 Based on the foregoing, the Authority concludes that the Company did collect funds from the Petitioner which were inappropriate and in violation of section 16-19
of the General Statutes of Connecticut and contrary to Department directives issued to the Company. The Authority shall initiate a new proceeding to investigate these violations and to determine whether any additional action shall be taken against the Company.
B. Orders
 1. On or before March 24, 1990, the Petitioner shall grant easements to Company as detailed in the main extension agreement for this development.
 2. No later than ten days after receiving the easements for this development, the Company shall refund to the Petitioner $7,914.79. The account for this matter shall be considered closed upon issuance of this refund to the Petitioner. CT Page 10411 A copy of the check to the Petitioner shall be submitted to the Department on the same day it is issued, as evidence of compliance with this order.
Quite obviously all of the findings of the DPUC were not favorable to the plaintiffs. While some findings were favorable, the right to receive recompense relief clearly hinged on the grant of easements by the plaintiffs. Quite obviously the plaintiff chose not to grant the easements ordered.
No impediment to bring a direct appeal pursuant to APA Sec. 4-183(b) then existed had the plaintiff desired to prosecute one.
Where the legislature has provided an administrative remedy, it should be exhausted. Connecticut Life and Health Insurance Guaranty Association v. Jackson, 173 Conn. 352, 357
(1977). A litigant's failure to exhaust all adequate administrative remedies deprives the court of subject matter jurisdiction over the controversy. The issue of lack of subject matter jurisdiction arising from a failure to exhaust administrative remedies may be raised at any time, and if the action is so flawed, it must be dismissed. Concerned Citizens of Sterling v. Town of Sterling, 204 Conn. 551, 556, 557 (1987). None of the recognized exceptions from the exhaustion doctrine have been shown to exist in this case. See Harwinton Drilling and Engineering Co. v. PUCA, 188 Conn. 90, 94 (1982).
The doctrine of exhaustion of administrative remedies is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions. ". . . the doctrine of exhaustion furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review." Concerned Citizens of Sterling, at 557 (citations omitted).
The Harwinton Drilling case is procedurally identical to the case before this court. There, the plaintiffs failed to take a direct appeal to the Superior Court of a DPUC decision, but instead brought a civil action to enjoin the decision, declare it a nullity, to recover money damage and for other appropriate relief. Id. at 93. The plaintiffs in this case similarly pray for money damages and a rescission of the agreement.
The Supreme court in Harwinton Drilling framed the issue as follows: CT Page 10412
 ". . . we must decide whether the plaintiffs' failure to pursue Appellate review of the DPUC decision by way of an appeal under the [Uniform Administrative Procedures Act, cited as "UAPA"] foreclosed the trial court from exercising jurisdiction." Id. at 93.
In deciding that the trial court had no jurisdiction to hear the plaintiffs' action, the court held that "absent a showing of immediate and irreparable harm [which is not alleged by the plaintiffs herein], a party who is aggrieved by a decision of an administrative agency may not institute an independent action for the purpose of bypassing the UAPA appeal process. In instances where the hearings before administrative agencies have been exhausted, there can be no judicial bypass of the UAPA absent allegations and evidence of immediate and irreparable harm." Id. at 98.
The Harwinton Drilling court also reiterated that the failure to pursue a direct appeal of an agency decision does not give rise to the right to maintain an independent action in equity. Id. at 97-98, citing Boucher Agency, Inc. v. Zimmer,160 Conn. 404, 410 (1971).
The DPUC has the statutory authority to grant the plaintiffs' relief from the fees, charges and conditions of service about which they complained both before the DPUC and in their complaint to this court. C.G.S. section 16-20. The plaintiffs failed to exhaust their administrative remedy by taking a direct appeal from the DPUC decision to the Superior Court as is provided by the Administrative Procedures Act, Connecticut General Statutes section 4-183(b). This court lacks jurisdiction over the subject matter of the controversy and is required, therefore, to dismiss the action.
The motion to dismiss is granted.
LEONARD W. DORSEY SENIOR JUDGE