**Robert MURPHY and Mary Murphy, Plaintiffs,**

v.

**ZONING COMMISSION OF THE TOWN OF NEW MILFORD, et al., Defendants.**

**CIV. NO. 3:00 CV 2297(HBF).**

United States District Court, D. Connecticut.

Aug. 30, 2002.

*Lucas Insertco Pharmaceutical,* 135 F.Supp.2d 277, 281 (D.P.R.2001).

Vincent P. McCarthy, McCarthy Law Offices, New Milford, CT, for plaintiffs.

Steven E. Byrne, Law Offices of Thomas P. Byrne, Farmington, CT, for defendants.

### RULING ON DEFENDANTS' MOTION TO DISMISS

FITZSIMMONS, United States Magistrate Judge.

## I. INTRODUCTION

Defendants move to dismiss plaintiffs' action in its entirety on the ground that this court lacks subject matter jurisdiction over it. [See Def.s' Mot. Dismiss (doc. # 64).] Specifically, defendants argue that: (1) plaintiffs have not exhausted their administrative remedies; (2) the issues raised in plaintiffs' complaint are not ripe for review; and (3) plaintiffs' action is barred by the Eleventh Amendment to the United States Constitution. [See Def.s' Mem. in Support of Mot. Dismiss (doc. # 65) at p. 5.] For the reasons set forth herein, defendants' motion to dismiss [doc. # 64] is DENIED.

## II. FACTS [1]

Plaintiffs are the owners of a single-family residence located at 25 Jefferson

---

1. The parties substantially agree on the rele-   vant facts, except as otherwise noted.

Drive, a cul-de-sac in the Town of New Milford, with approximately eight other single-family homes. Plaintiffs' residence is located in an R–40 (single-family residential) zone. Only single family dwellings, farms, and the keeping of livestock are permitted uses in this zone. Other uses are allowed by special permit.

Over a period of several years, plaintiffs have held regularly scheduled meetings at their home, primarily on Sundays. In the past, the meetings have included over forty attendees, but within the last year the number of people attending the meetings has decreased to between twenty-five and forty. Plaintiffs state that meetings begin at approximately 2 p.m. and end at approximately 6 p.m. Defendants suggest that the hours of operation may be as long as noon to 9 p.m.

Defendants also argue that plaintiffs "have converted their back yard into a parking lot," which, at this time, is gravel, but which plaintiffs desire to pave with asphalt. [Doc. # 65 at p. 3 (citation omitted).] Plaintiffs claim that they have not converted their backyard into a parking lot; they merely park cars in their driveway which extends to the rear of their home. [Pl.s' Opp. to Def.s' Mot. Dismiss (doc. # 67) at p. 1.]

Defendant New Milford Zoning Commission ("NMZC") held several meetings to address plaintiffs' use of their property. During these meetings, testimony and evidence was presented. Defendants claim that "[e]vidence showed that there were traffic, drainage and safety concerns." [Doc. # 65 at p. 3 (citation omitted).] Plaintiffs dispute that there was any "substantiation of traffic, drainage or safety concerns by the Defendants." [Doc. # 67 at p. 1.] Members of the NMZC, as well as the zoning enforcement officer ("ZEO"), made site visits to observe the plaintiffs' use of their home.

On November 28, 2000, the NMZC issued an opinion finding that plaintiffs' meetings were neither permitted by the zoning regulations nor incidental or ancillary uses customary to a residential neighborhood. The NMZC also ordered that, if the meetings continued, the ZEO issue a cease and desist order.

On November 29, 2000, the ZEO sent to plaintiffs a letter informing them that their use of their property violated the town's zoning regulations.

Plaintiffs filed this action on December 1, 2000 [doc. # 1], and moved for a preliminary injunction.

By letter dated December 19, 2000, the ZEO ordered plaintiffs to cease and desist their prayer meetings.

On December 20, 2000, plaintiffs filed an amended complaint [doc. # 10] and motion for temporary restraining order [doc. # 10]. On December 21, 2000, Judge Eginton granted the motion for temporary injunction and motion for temporary restraining order ("TRO"). [See, e.g., doc # 18.] The TRO allowed plaintiffs to continue their prayer meetings.

Shortly thereafter, the parties consented to trial before a United States Magistrate Judge [doc. # 20], and the case was transferred to the undersigned [doc. # 19]. On January 18, 2001, the undersigned held a hearing on plaintiffs' application for a preliminary injunction, which was granted on July 5, 2001. Now, defendants move to dismiss plaintiffs' complaint on the ground that this court has no subject matter jurisdiction to hear plaintiffs' claims. Plaintiffs oppose defendants' motion except for the Eighth Cause of Action, which plaintiffs have withdrawn. [See doc. # 67 at p. 2.]

## III. STANDARD OF REVIEW

On a motion to dismiss for lack of subject matter jurisdiction, a court must ac-

cept all factual allegations in the complaint as true and draw all inferences from those allegations in plaintiff's favor. *See Jaghory v. New York State Dept. of Educ.*, 131 F.3d 326, 329 (2d Cir.1997). The court may not dismiss a complaint unless "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *Id.* Where the existence of subject matter jurisdiction turns on a factual issue, however, the court is permitted to look beyond the complaint itself and may consider evidence outside the pleadings. *See United States v. Vazquez*, 145 F.3d 74, 80 (2d Cir.1998); *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir.1997). The burden of proving jurisdiction is on the party asserting it. *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir.1996).

## IV. *LEGAL ANALYSIS*

Defendants assert three theories under which the court lacks subject matter jurisdiction. First, defendants argue that plaintiffs have failed to exhaust administrative remedies available to them because this action is essentially the appeal of a decision of the NMZC and action by the ZEO, which should be appealed to New Milford Zoning Board of Appeals ("NM ZBA"). [*See* doc. # 65 at pp. 7–23.] Second, defendants argue that plaintiffs essentially seek review of an administrative decision that is non-final, and, as such, plaintiffs' claims are not yet ripe for review. [*See id.* at pp. 23–28.] Third, and finally, defendants argue that defendants are immune from suit in federal court un-der the Eleventh Amendment. [*See id.* at pp. 28–30.]

### A. *Exhaustion of Administrative Remedies*

#### 1. *Federal Claims*

Defendants argue that plaintiffs' claims under the United States Constitution and the Religious Land Use and Incarcerated Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, should be dismissed because plaintiffs have failed to exhaust their administrative remedies with respect to those claims.[2] Defendants further argue that plaintiffs do not allege a claim under 42 U.S.C. § 1983, and that, "[e]ven if this court wanted to permit the plaintiffs to amend their complaint so that another count could be added claiming a violation of sec.1983, such an amendment would not be possible" because RLUIPA provides an exclusive remedy for plaintiffs' claims. [Doc. # 64 at pp. 16–18.]

Plaintiffs respond: (1) that they do allege a claim under § 1983; (2) that this court has already acknowledged that claim; (3) that RLUIPA does not preclude a claim under § 1983; and (4) that they need not exhaust all administrative remedies before bringing these claims. The court agrees with plaintiffs.

■ Plaintiffs have sufficiently alleged that their action arises, at least in part, under § 1983.

First, plaintiff's Fourth Amended Complaint specifically states in paragraph 1 that this action arises under the United States Constitution and 42 U.S.C. § 1983. [*See* Fourth Am. Compl. ¶ 1.]

**2.** Although RLUIPA's predecessor, the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, *et. seq.*, was found to be unconstitutional by the Supreme Court in *City of Boerne v. P.F. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), neither party has raised the constitutionality of RLUIPA in this case. At least one court, however, has determined that RLUIPA is constitutional. *See Freedom Baptist Church of Delaware County v. Middletown*, 204 F.Supp.2d 857 (E.D.Pa.2002).

Second, defendants acknowledge that plaintiffs are asserting federal constitutional claims. Defendants apparently contend that plaintiffs assert claims under the United States Constitution, but not under § 1983. Defendants' reasoning is flawed. Section 1983 is simply the vehicle for asserting federal constitutional violations against municipal officials acting under color of law. *See, e.g., Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 617–618, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979) (" § 1983 by itself does not protect anyone against anything.... All civil suits [authorized by § 1983] are not based upon it; they are based upon the right of the citizen[;] the act only gives a remedy") (citation, footnote, and internal quotations omitted); *Freedom Baptist Church of Delaware County v. Tpwnship of Middletown,* 204 F.Supp.2d 857, 875 (E.D.Pa. 2002) ("Section 1983 ... does not create substantive rights, but provides a remedy for the violation of rights created by federal law") (citation and internal quotations omitted). Although direct causes of action under the United States Constitution may exist against federal officials, *see Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), Congress has provided § 1983 as the sole remedy for federal constitutional violations by state officials, *see Carlson v. Green,* 446 U.S. 14, 18–19, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); *Bauchman v. West High School,* 900 F.Supp. 254, 263 (D.Utah 1995); *Freedom Baptist Church,* 204 F.Supp.2d at 875 ("most courts have held that one cannot sue state and local officials for violation of the constitution of its own force[; o]ne must state a claim under § 1983"). Thus, it does not make sense to argue that, despite the citation to 42 U.S.C. § 1983 and the allegation that defendants' acts "were done ... under color and pretense of state law" [Fourth Am. Compl. ¶ 27], plaintiffs assert federal con-

stitutional claims but have not sufficiently alleged a claim under § 1983. Rule 8 requires no more notice than what plaintiffs have provided. *See* Fed.R.Civ.P. 8.

Third, the court has specifically acknowledged that plaintiffs have brought this action pursuant to § 1983. *See Murphy v. Zoning Comm'n,* 148 F.Supp.2d 173, 181 (D.Conn.2001) ("The Court agrees with plaintiffs that they are not required to exhaust the state administrative remedies before pursuing **their § 1983 claim**") (emphasis added). There is nothing in the Fourth Amended Complaint that suggests a different construction.

Plaintiffs have therefore sufficiently alleged a claim under § 1983. Moreover, contrary to defendants' argument, a § 1983 claim is also "available."

First, defendants cite no direct authority for the proposition that RLUIPA precludes a contemporaneous claim under § 1983. Defendants cite only *National Telecommunication Advisors, Inc. v. City of Chicopee,* 16 F.Supp.2d 117, 121 (D.Mass.1998), a case involving the Telecommunications Act. In that case, the district court analyzed *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n.,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), to determine whether the Telecommunications Act's remedial scheme was "sufficiently comprehensive to permit this court to conclude that Congress meant to preclude a § 1983 remedy." *City of Chicopee,* 16 F.Supp.2d at 121. Defendants argue that a similar analysis in this case would lead the court to the conclusion that § 1983 remedies are not available for RLUIPA violations.

Before venturing down that road, however, the court must consider the context in which defendants' argument is raised. Defendants move to dismiss plaintiffs' action for lack of subject matter jurisdiction on the ground that plaintiffs have

failed to exhaust their administrative remedies. Defendants also argue that RLUIPA entirely supplants § 1983 as the vehicle through which plaintiffs seek to enforce their federal rights. This court has already held-at least implicitly-that exhaustion of administrative remedies is not required for RLUIPA claims. *See Murphy*, 148 F.Supp.2d at 181–82.[3] *See also DiLaura v. Ann Arbor Charter Tp.*, No. 00–1846, 30 Fed.Appx. 501, 2002 WL 273774, 2002 U.S.App. LEXIS 3135 (6th Cir. Feb. 25, 2002) (not for full-text publication) (citing this court's decision in *Murphy* for the proposition that "exhaustion of administrative remedies is not required for RLUIPA claims when brought as part of a § 1983 action").

Simply put, whether § 1983 is an additional remedial vehicle for claims under RLUIPA, § 1983 fills the void with respect to plaintiffs' constitutional claims which are not covered by RLUIPA, or RLUIPA is the exclusive means by which plaintiffs may enforce their federal rights, exhaustion of administrative remedies. is not required. Consequently, subject matter jurisdictions exists over plaintiffs' federal claims; and defendants' motion to dismiss those claims is denied.

### 2. State Constitutional Claims

The question of whether plaintiffs must exhaust all available administrative remedies before bringing their *state* constitutional claims must be analyzed separately. Federal law governs whether exhaustion is required before bringing a section 1983 or RLUIPA claim. State law governs whether exhaustion is required before bringing a state constitutional claim.

The doctrine of exhaustion of administrative remedies is well-established in Connecticut jurisprudence, and provides that no one is entitled to judicial relief for a supposed threatened injury until the prescribed administrative remedy has been exhausted. *Johnson v. Statewide Grievance Committee*, 248 Conn. 87, 95, 726 A.2d 1154 (1999). The Connecticut Supreme Court has recognized, however, that a party aggrieved by a decision of an administrative agency may be excused from exhaustion of administrative remedies if

> recourse to the administrative remedy would be futile or inadequate; *Greenwich v. Liquor Control Commission*, 191 Conn. 528, 541–42, 469 A.2d 382 (1983); the procedures followed by the administrative agency are constitutionally infirm; *La Croix v. Board of Education*, [199 Conn. 70, 79, 505 A.2d 1233 (1986)]; or injunctive relief from an agency decision is necessary to prevent immediate and irreparable harm. *Pet v. Department of Health Services*, [207 Conn. 346, 370, 542 A.2d 672 (1988)].

*Johnson*, 248 Conn. at 103, 726 A.2d 1154. Although the parties do not brief in any detail the state exhaustion rule or its exceptions,[4] because the issue affects subject matter jurisdiction the court will analyze whether any of the exceptions applies in this case.

Without specifying any particular provision, plaintiffs allege that defendants' actions violate plaintiffs' "rights of speech, peaceable assembly, expressive conduct, and free exercise" under the Connecticut State Constitution. [Pls' Fourth Am. Compl., Ninth Cause of Action ¶¶ 77, 78.]

---

**3.** Moreover, the court explicitly affirms that holding. The Supreme Court's reasoning in *Patsy v. Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), as to why exhaustion is not a prerequisite to a § 1983 claim, is equally applicable to claims under RLUIPA.

**4.** The parties simply dispute the applicability of one case, *Husti v. Zuckerman Property, Ltd.*, 199 Conn. 575, 508 A.2d 735 (1986).

In the Eleventh Cause of Action—which is cryptically titled "Violation of the 1993 Ct. ALS 252"—plaintiffs also allege that "defendants' actions burden the plaintiffs' exercise of religion under section 3 of article I of the Constitution of Connecticut" [*id.*, Eleventh Cause of Action ¶ 86], but that count is apparently brought pursuant to Connecticut General Statutes § 52 571b rather than the Constitution itself.[5]

Although the concluding paragraph of the Ninth Cause of Action is written in broad language, the question of whether exhaustion is required before asserting it can be answered by analyzing certain previous allegations which plaintiffs have incorporated into that count. For example, plaintiffs have alleged that individual and communal prayer is a central tenet of Christianity, their religion [Fourth Am. Compl. ¶ 16]; that they have a sincerely-held religious belief that they are to pray individually and with others as an act of worship [*id.* ¶ 17]; that they are to "pray without ceasing according to Biblical guidance" [*id.* ¶ 18]; that their faith must be exercised within their homes as well as in more public settings [*id.* ¶ 19]; and that, since 1995, they have "invited their family and close friends into their home on Sunday afternoons for religious fellowship, Bible study, and prayer," but have not opened the meetings to the general public [*id.* ¶ 13]. Moreover, plaintiffs have alleged that they "have no adequate or speedy remedy at law to correct or redress the deprivations [of their state constitutional rights]." [*Id.* ¶ 28.]

■ Nothing in plaintiffs' fourth amended complaint suggests that proceeding before the appropriate administrative tribunal(s) would be futile. Although plaintiffs do argue, briefly, that "[t]he state administrative boards do not have competence in the area of constitutional law and cannot provide the Plaintiffs with the relief they are seeking for the vindication of their constitutional rights" [Pl.s' Opp. at p. 6], the Connecticut Supreme Court has held that "[t]he fact that [a party has] raised state constitutional issues does not give them the right to bypass [municipal zoning procedures]," *Husti,* 199 Conn. at 590, 508 A.2d 735 (citations omitted); *see also O & G Industries, Inc. v. Planning and Zoning Comm'n,* 232 Conn. 419, 425, 655 A.2d 1121 (1995) ("[e]xhaustion is required even in cases where the agency's jurisdiction over the proposed activity has been challenged") (citations omitted). Accordingly, the first exception does not apply.

■ The third exception does apply. The Connecticut Supreme Court held in

---

5. Plaintiffs use the citation, "1993 Ct. ALS 252"—one with which the court is not familiar-to seemingly reference both a state statute and a provision of the Connecticut Constitution. For example, plaintiffs title their "Thirteen [*sic*] Cause of Action" a "Violation of Connecticut Statute 1993 Ct. ALS 252 (A.C.R.F.)." On the other hand, in the Jurisdiction section of the Fourth Amended Complaint, plaintiffs allege that "[t]his action arises ... under the Constitution of the State of Connecticut, particularly 1993 Ct. ALS 252." [Fourth Am. Compl. ¶ 1.] Apparently, plaintiffs intend to refer to Public Acts 1993, No. 93–252 (P.A. 93–252), which has been codified at Connecticut General Statutes § 52–571b. It is unclear why plaintiffs used that particular method of citation, but it is clear that the Eleventh Cause of Action and Thirteenth Cause of Action, to the extent they are different, each allege violations of a state statute: § 52–571b. However, since defendants do not argue that exhaustion was required before asserting claims pursuant to § 52–571b (indeed, defendants' motion is not directed to any count in particular), the court declines to address the validity of those counts. Moreover, absent a demonstration of some authority to the contrary, it appears that § 52–571b would be excepted from the exhaustion requirements for the same reasons as RLUIPA, the federal act that § 52–571b parallels.

*Pet v. Department of Health Services* that a plaintiff need not exhaust his administrative remedies if injunctive relief from a governmental decision is necessary to prevent immediate and irreparable harm. 207 Conn. at 370, 542 A.2d 672. The Court also reaffirmed that principle in *Johnson v. Statewide Grievance Committee*, 248 Conn. at 103, 726 A.2d 1154, and *Polymer Resources, Ltd. v. Keeney*, 227 Conn. 545, 561, 630 A.2d 1304 (1993). In this case, plaintiffs have not only alleged that they "have no adequate or speedy remedy at law to correct or redress the deprivations [of their state constitutional rights]" [Fourth Am. Compl. ¶ 28], they have proven it, *see Murphy*, 148 F.Supp.2d at 187–91. In other words, plaintiffs commenced this action because, as this court has already found, defendants' actions (including the issuance of a cease and desist order) were a substantial burden on, and thus caused irreparable harm to, plaintiffs and their prayer group participants. *Murphy*, 148 F.Supp.2d at 181, 188–90. Therefore, because plaintiffs made a showing of immediate and irreparable harm, they were entitled to institute an independent action despite having not exhausted all administrative procedures available to them. *See, e.g., Harwinton Drilling and Engineering Co., Inc. v. Public Utilities*

*Control Authority*, 188 Conn. 90, 98, 448 A.2d 210 (1982).[6] *Cf. Gangemi v. Zoning Board of Appeals*, 255 Conn. 143, 150, 763 A.2d 1011 (2001) (holding that plaintiff was not required to exhaust all administrative procedures because the zoning condition violated the strong public policy against restrictions on the free alienability of property).[7] Because the Superior Court could have heard this matter despite the nonexhaustion of all administrative remedies, this court can hear them pursuant to its supplemental jurisdiction over related state law claims.[8]

### B. *Ripeness*

The ripeness issue is the only issue explicitly left open by this court's July 5, 2001 ruling. *Murphy*, 148 F.Supp.2d at 183 n. 5 (holding that plaintiffs' RLUIPA claim was ripe, but "declin[ing] to address whether the remainder of plaintiffs' claims are currently ripe," and inviting defendants to "address this question in a motion to dismiss"). This court's express ruling was that "plaintiffs' claim that the Zoning Commission's actions violated [RLUIPA] is ripe for judicial review." *Id.* at 183. In so holding, the court found important the cease and desist letter issued by the ZEO after the filing of the original complaint.

---

**6.** The second exception to the exhaustion doctrine-when the procedures followed by the administrative agency are constitutionally infirm-is potentially applicable given plaintiffs' implicit position that even requiring them to exhaust all administrative procedures in order to regain their ability to conduct prayer meetings violates their constitutional rights. However, given the court's holding regarding the third exception, the court need not address whether the procedures are constitutionally infirm. Abstaining from such decision also avoids unnecessarily deciding a constitutional issue.

**7.** Certainly, plaintiffs' rights to freedom of religion, speech, and assembly are as strong a policy as (or stronger than) the policy against

restrictions on the free alienability of property.

**8.** Although this court's July 5, 2001 decision entering the preliminary injunction was based on plaintiffs' RLUIPA and federal constitutional claims, there is no reason to believe that an injunction would not have been warranted under § 52–571b (the state parallel to RLUIPA) and plaintiff's state constitutional claims. Thus, this court finds that injunctive relief from the town's actions was necessary to prevent immediate and irreparable harm to plaintiffs' state law rights, as well as to their federal rights, and therefore exhaustion was not required. *See Johnson*, 248 Conn. at 103, 726 A.2d 1154 (citing *Pet*, 207 Conn. at 370, 542 A.2d 672).

*See id.* (ordering plaintiffs to file a Second Amended Complaint incorporating the issuance of the cease and desist order by the ZEO). Based on "the unique circumstances of this case," this court held that plaintiffs' RLUIPA claim is ripe for review. The issue now before the court, therefore, is whether plaintiffs' other federal and state law claims are also ripe for review.[9]

While the policies underlying the exhaustion and ripeness doctrines "often overlap," the two doctrines remain "conceptually distinct." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 192–93, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). In *Williamson*, the Supreme Court held that plaintiff's "taking" claim under the Fifth Amendment was not ripe for review because, although plaintiff had been rejected by the commission, plaintiff could have sought a variance from the zoning ordinance that would have resolved many of the commission's objections. *Id.* at 188, 105 S.Ct. 3108. The Court applied a two-part test: (1) whether the agency had rendered a "final decision" on the matter; and (2) whether plaintiff had sought just compensation by means of an available state procedure. *Id.* at 186, 105 S.Ct. 3108. Since the plaintiff in *Williamson* had not applied for a variance, he had not received a "final, definitive" decision from the commission, and thus the matter was not ripe for judicial review. *Id.* at 191, 105 S.Ct. 3108.

In our case, the NMZC issued a decision regarding plaintiffs' use of their property, and the ZEO issued a cease and desist order, but plaintiffs did not apply for a special permit or appeal the NMZC's deci-

sion to the Zoning Board of Appeals ("ZBA"). As this court has already found, "[o]nce the [NMZC] finds that a use is not permitted, the applicant's options are to apply for a special use permit or, if the [NMZC] issued a decision, to appeal the decision to the [ZBA]." *Murphy*, 148 F.Supp.2d at 179 (¶ 47). The question is whether plaintiffs' failure to apply for a permit or appeal the decision requires the court to dismiss based on ripeness consideration.

Defendants argue only that plaintiffs failed to appeal "the agency's action" to the ZBA and Superior Court, and that there would be "no hardship to the parties at this time if judicial review is withheld." [Def.s' Mem. in Support of Mot. Dismiss (doc. # 65) at 27.] Defendants do not argue in their motion to dismiss or memorandum that plaintiffs were required to apply for a special permit despite the decision issued by the NMZC.

Defendants' argument that plaintiffs were required to appeal either the decision of the NMZC or the ZEO's cease and desist order must fail. The Supreme Court explained in *Williamson* that, while a party must have received a final decision from the initial decision maker, the party need not exhaust all available appeals before the action will be considered ripe for federal court review. *See Williamson*, 473 U.S. at 193, 105 S.Ct. 3108. Specifically, the Court stated that a party need not avail itself of all administrative procedures that would be required for exhaustion purposes "because those procedures clearly are remedial," rather than part of the decision-making process. *Id.* Thus, in

---

9. In the first seven counts of the fourth amended complaint, plaintiffs assert violations of certain of their rights under the First and Fourteenth Amendments to the United States Constitution, presumably pursuant to section 1983, and, in the twelfth count, assert a violation of RLUIPA. Plaintiffs have with-

drawn their Eighth Cause of Action (asserting a violation of the Takings Clause of the Fifth Amendment), and, in the ninth, tenth, eleventh, and thirteenth counts, allege violations of Connecticut statutes and the Connecticut Constitution.

*Williamson,* the Court held that the respondent was not required to appeal the commission's rejection to the board of zoning appeals "because the Board was empowered, at most, to review that rejection, not to participate in the Commission's decisionmaking." *Id.*

◼ Under the explicit language of *Williamson,* therefore, plaintiffs in our case were not required to appeal either the Commission's decision or the ZEO's cease and desist order to the ZBA for the issue to be considered ripe for federal court review. *Id. See also Montgomery v. Carter County,* 226 F.3d 758, 767 (6th Cir. 2000) ("forcing the plaintiff to pursue state 'remedial' procedures would be an exhaustion requirement, a requirement that *Williamson County* explicitly does not impose").[10]

Moreover, defendants do not argue that plaintiffs were required to apply for a special permit for the matter to be considered ripe for judicial review. Although defendants' witness did testify at the injunction hearing that a special permit[11] application was an option for plaintiffs, the town's position has consistently been that the zoning regulations specify what is permitted. Although one can obtain a special permit for a "church," plaintiffs do not seek to operate a "church," and plaintiffs' prayer meetings are not open to the public. Absent any showing by defendants that a special permit would have been available to authorize plaintiffs' use of their home, the court declines to impose the requirement that plaintiffs apply for a special permit before their claims can be ripe.

This applies to plaintiffs' federal and state constitutional claims, as there appears to be no important legal distinction between the two on this subject. Moreover, plaintiffs' section 52–571b claim is also ripe. That statute is the parallel of RLUIPA, and this court has determined that the RLUIPA claim is ripe.[12] Finally, plaintiffs also have an "ultra vires" count. [Fourth Am. Compl., count 10.] Once again, this count is not specifically addressed by either party. However, regardless of how one might classify this count (e.g., constitutional, statutory, common law, etc.), it alleges that defendants

**10.** In other words, an appeal to the ZBA might have been required for exhaustion purposes. However, given this court's previous holding that exhaustion is not required for plaintiffs' claims, the failure to appeal to the ZBA does not warrant dismissal.

**11.** The terms "special exception" and "special permit" are interchangeable. *Beckish v. Planning & Zoning Comm'n,* 162 Conn. 11, 15, 291 A.2d 208 (1971). When acting upon an application for a special permit, the zoning commission acts in an administrative, rather than a legislative or quasi-judicial, capacity. *See A.P. & W. Holding Corp. v. Planning & Zoning Board,* 167 Conn. 182, 184–85, 355 A.2d 91 (1974); *Farina v. Zoning Board of Appeals,* 157 Conn. 420, 422, 254 A.2d 492 (1969). A special permit allows a property owner to use his property in a manner expressly permitted by the regulations; a permit is required because the nature of the proposed use must be regulated because of par-

ticular, unique factors. *Whisper Wind Development Corp. v. Planning & Zoning Comm'n,* 32 Conn.App. 515, 519, 630 A.2d 108 (1993). Connecticut law does not permit a reviewing court to substitute its judgment for that of the land use agency. *Timber Trails Corp. v. Planning & Zoning Comm'n,* 222 Conn. 380, 401, 610 A.2d 620 (1992). The agency is cloaked with liberal discretion, and its action is subject to review by a court only to determine whether it acted arbitrarily, unreasonably, or illegally. *Connecticut Sand & Stone Corp. v. Zoning Board of Appeals,* 150 Conn. 439, 442, 190 A.2d 594 (1963). *See also generally Courtney v. Planning & Zoning Comm'n,* No. CV000339450S, 2001 WL 1355645, **3–4 (Conn.Super.Oct.19, 2001).

**12.** Notably, however, the eleventh and thirteenth causes of action are apparently duplicative, as both seem to assert identical claims under section 52–571b.

have *no authority* to regulate the activities that are the subject of this case. Defendants argue unequivocally that they do have such authority. Therefore, this issue is "ripe" for review.

### C. *Eleventh Amendment Immunity*

■ Finally, defendants argue for the first time that they are immune from suit in federal court under the Eleventh Amendment to the United States Constitution. Defendants are mistaken.

The Eleventh Amendment provides that: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Additionally, it is well-settled that, although "the Amendment by its terms does not bar suits against a State by its own citizens, . . . an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662–663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (citations omitted).

The Supreme Court has also made clear that, although "States are protected by the Eleventh Amendment, . . . municipalities are not." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (citing *Monell v. Dept. of Social Services*, 436 U.S. 658, 690 n. 4, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). As the court noted in *Will*, "local government units . . . are not considered part of the State for Eleventh Amendment purposes." *Id.* (citing *Monell*, 436 U.S. at 690 n. 4, 98 S.Ct. 2018). Simply put, municipalities and municipal officers are not immune from suit in federal court under the Eleventh Amendment. *See Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep t. of Health and Human Resources*, 532 U.S. 598, 609 n. 10, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (only states immune; plaintiffs may sue municipalities and other political subdivisions of the state); *Will*, 491 U.S. at 70, 109 S.Ct. 2304; *Monell*, 436 U.S. at 690 n. 4, 98 S.Ct. 2018; *Storer Cable Communications v. Montgomery*, 806 F.Supp. 1518, 1530 (M.D.Ala.1992) ("eleventh-amendment immunity does not apply to municipalities or their officials") (citing *Robinson v. Georgia Dept. of Transportation*, 966 F.2d 637, 638 (11th Cir.1992); *Schopler v. Bliss*, 903 F.2d 1373, 1378 (11th Cir.1990)); *Hector v. Weglein*, 558 F.Supp. 194, 199 (D.Md.1982) (no Eleventh Amendment immunity for mayor, city council, or police commissioner). Therefore, defendants' motion to dismiss on the ground of Eleventh Amendment immunity is denied.

## V. *CONCLUSION*

For the foregoing reasons, defendants' motion to dismiss **[doc. # 64]** is **DENIED.** This is not a recommended ruling. The parties consented to proceed before a United States Magistrate Judge on January 10, 2001 [doc. # 20], with appeal to the Court of Appeals.